Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 7784 | **DATE** | 3/4/2013 |
| **CASE TITLE** | Horton v. Pobjecky, et al. | | |

**DOCKET ENTRY TEXT:**

Defendants' motion to stay [20] is granted. This case is stayed until further order of the court. The parties shall file a joint status report on March 29, 2013 and every ninety days thereafter until the stay is lifted.

■[ For further details see text below.]

Docketing to mail notices.

    Plaintiff, James Horton, is the administrator to the estate of Michael DeAngelo Sago, Jr. This case arises out of an incident where Sago, along with three other individuals, allegedly entered a restaurant to rob it and were stopped by defendant Frank Pobjecky, an off-duty sheriff's deputy. During the incident, Pobjecky allegedly fired on, and killed, Sago. In the current suit, plaintiff seeks damages arising from Sago's death from defendants Pobjecky, Winnebago County, and Winnebago County Sheriff Richard Meyers. Currently before the court is defendants' motion to stay this proceeding during the pendency of the state criminal prosecutions of the other individuals involved in the incident for murder, attempted murder, robbery, weapons charges, and other felonies. For the reasons that follow, this court grants the motion and stays this proceeding during the pendency of the criminal proceedings.

## I. BACKGROUND

    On October 1, 2011, in Marie's Pizza in Rockford, Illinois, Pobjecky, an off-duty sheriff's deputy, allegedly shot and killed Sago while Sago participated in an armed robbery of the restaurant. Three other individuals, Lamar Coates, Desmond Bellmon, and Brandon Sago,[1] were allegedly also involved in the robbery. At least some of the other individuals allegedly involved were also wounded by Pobjecky during the robbery. Based on that incident, on October 19, 2011, Winnebago County filed a thirty-three count indictment against the surviving participants: Coates, Bellmon, and Brandon Sago.

    Also based on the incident at Marie's Pizza, plaintiff filed a lawsuit on behalf of the deceased Sago against Pobjecky, his employer Meyers, and the county. Specifically, plaintiff alleges that Pobjecky violated 42 U.S.C. § 1983 through the use of excessive force (Count I) and by failing to provide medical care (Count II). Plaintiff also alleges pendent state law claims for wrongful death (Count III), willful and wanton personal injury under the Illinois Survival Act, 755 ILCS 5/27-6 (Count IV), and battery under the Illinois Survival Act (Count V). Finally, plaintiff seeks to have Meyers and Winnebago County indemnify Pobjecky and pay the damages for Pobjecky's actions in the line of duty (Count VI). Thereafter, defendants filed the instant motion to stay plaintiff's civil case during the pendency of the criminal proceedings in Winnebago County.

## II. ANALYSIS

Defendants argue that this court should stay the current proceedings based on comity and judicial efficiency under the doctrine set out by the Supreme Court in Younger v. Harris, 401 U.S. 37 (1971). In Younger, the Supreme Court held that, absent extraordinary circumstances, federal courts should abstain from enjoining ongoing state criminal prosecutions. Id. at 53. "The Court's holding in Younger was based partly on traditional principles of equity, but rested primarily on the even more vital consideration of comity." FreeEats.com, Inc. v. Indiana, 502 F.3d 590, 595 (7th Cir. 2007) (quotation marks omitted). The doctrine has since been expanded from its roots concerning injunctive actions, and the Seventh Circuit now requires that this court abstain from ruling on § 1983 damages cases, like the instant one, during the pendency of state criminal proceedings where Younger would otherwise apply to promote comity between the federal and state courts and avoid the "federal-state friction" inherent in two courts considering the same subject matter contemporaneously. See Simpson v. Rowan, 73 F.3d 134, 137-38 (7th Cir. 1995). Following Simpson, "it is generally appropriate under Younger v. Harris for a district court to stay civil proceedings that may interfere with a pending state criminal case." Cady v. S. Suburban Coll., 152 F. App'x 531, 533 (7th Cir. 2005) (citation omitted).

Younger requires federal courts to stay a civil rights action when there are "ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances-like bias or harassment-exist which auger against abstention." FreeEats.com, 502 F.3d at 596 (quotation marks omitted). The criminal proceedings clearly fulfill the first requirement and implicate some of the most important of the state's interests—the prosecution of violent crimes, including first degree murder.

The major issue in this case, however, is whether Younger is inapplicable because plaintiff is not a party to the state criminal proceeding. Plaintiff represents the estate of Sago, who was allegedly involved in the robbery at issue in the state criminal proceedings but died during the incident. Because of his death, no charges were brought against Sago and plaintiff does not have the opportunity to have any of his arguments reviewed in the state proceedings as contemplated by the third prong of the Younger test. See Olsson v. O'Malley, 352 F. App'x 92, 94 (7th Cir. 2009). Nevertheless, the court finds the reasoning of Beets v. County of L.A., 669 F.3d 1038, 1045-46 (9th Cir. 2012), persuasive. In Beets, the Ninth Circuit determined that the related, although inapplicable in this case, preclusion doctrine set out in Heck v. Humphrey, 512 U.S. 477 (1994), applies to uncharged co-defendants if the underlying criminal prosecution involved the same incident and issues. Beets, 669 F.3d at 1045-46. The same considerations—finality, consistency, and comity—which led the Ninth Circuit to extend the Heck doctrine apply in cases, like this one, where a deceased or otherwise uncharged co-actor in a criminal act seeks § 1983 damages during the pendency of state criminal proceedings. The criminal defendants, who allegedly worked with Sago to rob the restaurant, may very well raise the same issues, or issues that directly impact, plaintiff's claim for excessive force in the process of raising self-defense to the murder or attempted murder charges or in the process of defending against the armed robbery charge. Furthermore, the interests of consistency and comity are both best served by permitting the state court to complete the criminal proceeding without interference from federal discovery subpoenas or the potential of inconsistent rulings. The Younger doctrine is grounded primarily in comity, see FreeEats.com, 502 F.3d at 595, and plaintiff has not shown that the fact that Sago is unfortunately deceased somehow lessens this court's responsibility to respect the state court's criminal proceedings dealing with the same incident.

This is particularly applicable in light of the facts of this case. In the motion to stay, defendants make several factual allegations, including that plaintiff's counsel previously attempted to secure discovery from the state criminal case and the state judge responded by placing a protective order into effect to forestall that attempt. Plaintiff does not deny that factual allegation in his response. Case management in general, and the issuance of protective orders in particular, are issues entrusted to the discretion of trial courts. See, e.g., Dinkins v. Bunge Milling, Inc., 313 F. App'x 882, 884 (7th Cir. 2009). Although the record here does not provide the state court's reason for entering the protective order and denying plaintiff counsel's request, this court does not sit in review

of the state trial court. The court can conjure few actions which would show less respect for the sovereignty and authority of the state courts than to permit discovery in a case to go forward based on federal subpoenas where the state court has specifically ordered that certain pieces of evidence should be subject to a protective order. If plaintiff wishes to contest the protective order, he should follow Illinois' rules to intervene in the criminal matter or seek a writ of mandamus. This court is unwilling to permit plaintiff to sidestep the order by filing a lawsuit in this court during the pendency of the criminal proceedings.

Finally, there are no extraordinary circumstances which auger against abstention in this case. Plaintiff alleges that he will be prejudiced by the delay, but the court is unpersuaded. Although it is possible plaintiff may face some prejudice based on the delay, it is equally possible that, depending on the testimony at and result of the criminal proceeding, plaintiff's case may be much easier to prove. Additionally, because much of the evidence will have already been gathered and tested before a jury, the expense of litigating plaintiff's claims may be significantly reduced. Furthermore, federal subpoenas for testimony and documents may interfere with the state's ongoing investigation by tying up witnesses' time and interfering with the gathering and review of documents or other evidence. In short, then, the equities weigh in favor of entering a stay, and certainly do not amount to extraordinary circumstances which auger against the imposition of the stay. Accordingly, this court is required under the Younger doctrine to enter defendants' requested stay of all proceedings until after the underlying criminal proceedings have been completed.

Moreover, even if Younger did not apply to this case, this court would nevertheless exercise its inherent authority to order the stay. "The court has the inherent power to stay civil proceedings, postpone civil discovery, or impose protective orders when the interests of justice so dictate." Doe v. City of Chi., 360 F. Supp. 2d 880, 881 (N.D. Ill. 2005).

> In determining whether a stay should be granted in a civil trial based on the existence or potential existence of a criminal proceeding, the court considers six factors: (1) whether the two actions involved the same subject matter, (2) whether the two actions are brought by the government, (3) the posture of the criminal proceeding, (4) the public interests at stake, (5) the plaintiff's interests and possible prejudice to the plaintiff, and (6) the burden that any particular aspect of the proceedings may impose on the defendants.

Id. Virtually all of these factors weigh in favor of imposing a stay. The two actions involve the same subject matter; the criminal proceeding was underway and filed before the current civil proceeding; the public interest in the unhindered prosecution of violent crimes is very high; plaintiff's interests are as likely to be helped as hindered by the stay, as set out above; and defendants will find themselves burdened with not only preparing a murder trial but simultaneously having to defend against civil accusations arising from the same incident. On the other hand, the public does have an interest in the swift resolution to accusations of excessive force that allegedly caused the death of a sixteen year old and this civil action is not brought by the government, both of which militate against granting the stay. See id. (discussing the risk of the government using civil discovery to obtain evidence for the criminal prosecution thereby increasing the need for a stay). Nevertheless, in weighing these various factors, the court is convinced that the interests of justice would be served by a stay in this case until after the underlying criminal proceedings are complete.

### III. CONCLUSION

Based on both the Younger doctrine and this court's inherent authority, defendants' motion to stay is granted. All further proceedings are stayed until further order from this court.

---

1. According to defendants, Lamar Coates and Brandon Sago are both related to the deceased Michael Sago, Jr. For simplicity, the court will refer to Michael Sago, Jr. as "Sago" and refer to Brandon Sago, where necessary, by his full name.